**IT IS ORDERED as set forth below:**

**Date: October 12, 2018**

　　　　　　　　　　　　　　　　　　　*Paul Baisier*
　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　**Paul Baisier**
　　　　　　　　　　　　　　　　　　　**U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| In re: | CASE NUMBER |
| **LUCIA M. BAKER,** | **14-71600-PMB** |
| Debtor. | CHAPTER 13 |
| **1ST FRANKLIN FINANCIAL CORPORATION,** | |
| Movant, | |
| v. | CONTESTED MATTER |
| **LUCIA M. BAKER,** | |
| Respondent. | |

### ORDER DENYING MOTION FOR RELIEF FROM AUTOMATIC STAY

　　Before the Court is a *Motion for Relief from the Automatic Stay and Waiver of 30-Day Hearing Requirement* (Docket No. 42)(the "Motion") filed by 1st Franklin Financial Corporation (the "Movant"), on August 1, 2018. In the Motion, Movant seeks relief from the automatic stay

of 11 U.S.C. § 362(a) to proceed with collection efforts, including the commencement of garnishment actions against Lucia M. Baker (the "Debtor"), regarding a loan obtained by the Debtor after the filing of the petition in this case (the "Loan").

The Debtor's Chapter 13 plan (the "Plan")(Docket No. 21) was confirmed by entry of an order on February 26, 2015 (the "Confirmation Order")(Docket No. 29). In the Motion, Movant states that the Debtor entered into the Loan on April 5, 2018. Movant also contends that the Loan was, at the time of the filing of the Motion, due for the May 5, 2018 through July 5, 2018 payments in the total amount of $615.00. Additionally, Movant asserts that, by virtue of the Loan, it holds an unsecured claim against the Debtor in the amount of $2,100.78 (the "Claim").

A hearing was held on the Motion on September 20, 2018 (the "Hearing"). Counsel for Movant appeared at the Hearing in support of the Motion, and counsel for the Debtor appeared in opposition. Counsel for the Chapter 13 Trustee was also present at the Hearing, but took no position on the Motion.

At the Hearing, Movant explained to the Court that the Debtor had initially obtained a "live check" loan on October 19, 2017 (the "Live Check Loan"). Movant also contended that, by the terms of the Live Check Loan, the Debtor, in obtaining such loan, affirmed that she was not involved in a bankruptcy proceeding. Movant asserted that the Debtor subsequently obtained the Loan to pay off the Live Check Loan and to pay medical bills. Movant also noted at the Hearing that the Loan was made to the Debtor on an unsecured basis. Movant contended that the Debtor did not inform it of her pending bankruptcy case when she obtained the Loan, but that it learned of the bankruptcy case through a search it conducted prior to filing a state court action to collect on the defaulted Loan.

All of the foregoing "facts," however, are simply contentions made by counsel for Movant. Movant did not put on any evidence at the Hearing, nor did it attach to its Motion copies of the purported documents for the Loan or the Live Check Loan. Consequently, the Court has no evidence as to the terms of the Loan or the Live Check Loan that purportedly preceded it. At the Hearing, counsel for the Debtor did concede that the Debtor took out the Loan after the filing of this case, that she is in default on the Loan, and that the Loan amount asserted by Movant is not materially incorrect.

In support of the relief sought in the Motion, Movant argued at the Hearing that this case is governed by *Telfair v. First Union Mortgage Corp.*, 216 F.3d 1333 (11th Cir. 2000), in which Movant asserted the Eleventh Circuit held that a debtor's post-confirmation earnings are not property of the bankruptcy estate, but rather revest in the debtor upon confirmation of the Chapter 13 plan under 11 U.S.C. § 1327(b).[1] Thus, Movant contended that, because the Debtor's postpetition earnings are not property of her bankruptcy estate, the automatic stay of 11 U.S.C. § 362(a) does not operate to preclude garnishment of such earnings. Movant also asserted at the Hearing that requiring it to be bound by the Confirmation Order would violate its due process rights because it did not have an opportunity to object to the Confirmation Order.

In opposition to the Motion, the Debtor argued that the automatic stay of Section 362 remains in effect as to the Debtor's postpetition earnings under 11 U.S.C. § 1306(a)(2) and the terms of her confirmed Plan, both of which provide that her postpetition earnings are property of the estate. Although the Debtor did not oppose the granting of stay relief to permit Movant to liquidate the Claim, the Debtor did oppose the institution of garnishment proceedings against the

---

[1] At the Hearing, Movant also cited *In re Toth*, 193 B.R. 992 (Bankr. N.D. Ga. 1996) for this proposition.

3

Debtor to collect on the Claim.  In support of her position, the Debtor cited to *In re Growth Dev. Corp.*, 168 B.R. 1009 (Bankr. N.D. Ga. 1994) at the Hearing for the proposition that the automatic stay applies to prevent garnishment proceedings against a debtor on a postpetition claim, such that a postpetition claimholder must obtain stay relief prior to instituting such proceedings.[2]

## LEGAL ANALYSIS[3]

The answer to the question at issue in this case—whether Movant is entitled to commence garnishment proceedings against the Debtor's post-confirmation earnings—requires an answer to some subsidiary questions.  First, is the property affected by Movant's proposed institution of garnishment proceedings, the Debtor's post-confirmation earnings, property of the bankruptcy estate?  If the answer to this first question is "no," then the automatic stay of 11

---

[2] The facts of *In re Growth Dev. Corp.* are distinguishable from those of this case.  In *In re Growth Dev. Corp.*, a Chapter 11 debtor incurred a postpetition, pre-confirmation unsecured claim by virtue of a garnishment default judgment.  Subsequent to the garnishment default judgment, the creditor attempted to institute garnishment proceedings against the debtor's bank accounts.  The court held that the creditor could not commence collection activities against property of the estate—the bank accounts—without obtaining stay relief under Section 362(d).  *In re Growth Dev. Corp.*, 168 B.R. at 1017.  In considering whether the unsecured creditor was entitled to stay relief, the court found no "cause" for granting such relief, as the creditor failed to show "why he should be allowed to collect his unsecured claim from the Debtor, while all other preconfirmation claims will be subject to discharge under § 1141(d)(1)." *Id.* at 1018.  This finding was supported by the fact that, in a Chapter 11 case, a postpetition, pre-confirmation claim will be discharged pursuant to 11 U.S.C. § 1141(d)(1)(a).  *Id*.  Ultimately, the court found that if the creditor was permitted to collect his claim against the debtor, he would be, in effect, receiving special treatment "contrary to bankruptcy's important goal of equal treatment among creditors. . ." as all other pre-confirmation claims would be discharged in the case. *Id.* at 1017.  Here, the Claim, being a postpetition claim in a Chapter 13 case, will not be discharged upon the Debtor's completion of the Plan. 11 U.S.C. § 1328(a).  Accordingly, Movant, unlike the creditor in *Growth Dev. Corp.*, would not necessarily be receiving special treatment if granted stay relief as compared to other general unsecured creditors in the Plan, as those creditors' claims will be discharged but the Claim will not.  Because the Claim is not subject to discharge, the basis for denying stay relief in *Growth Dev. Corp.* is inapplicable to the circumstances of this case.

[3] The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a), and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

U.S.C. § 362(a)[4] does not apply, and Movant can proceed to liquidate the Claim and garnish the Debtor's post-confirmation earnings. If, however, the answer is "yes," then the stay of Section 362(a) applies, and we reach the second question—is Movant entitled to stay relief under 11 U.S.C. § 362(d) to institute garnishment proceedings against the Debtor's post-confirmation earnings?

### I.   Post-Confirmation Earnings & Property of the Estate

In determining whether the Debtor's post-confirmation earnings constitute property of the bankruptcy estate, two (2) statutory provisions are relevant: 11 U.S.C. § 1306 and 11 U.S.C. § 1327. Section 1306(a) provides that:

> (a) Property of the estate includes, in addition to the property specified in section 541 of this title—
>
>> (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

11 U.S.C. § 1306(a)(2). Section 1327 of the Bankruptcy Code outlines the effects of confirmation and states in relevant part, "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. § 1327(b).

---

[4] The automatic stay of 11 U.S.C. § 362(a) prohibits, among other things:

> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
> (4) any act to create, perfect, or enforce any lien against property of the estate.

11 U.S.C. § 362(a)(3), (4). As noted above, the Debtor does not assert that the automatic stay precludes Movant from filing suit on its Loan, or from pursuing that suit through judgment. The Debtor objects only to collection of such a judgment from property of the estate. In that context, only these two (2) subsections of Section 362(a) are relevant.

In construing these two (2) provisions together, many courts have identified a conflict regarding post-confirmation earnings when the treatment of such property is "not otherwise provided" for in a Chapter 13 plan or confirmation order. In such circumstances, like those of *Telfair*, *supra*, courts must determine whether post-confirmation earnings constitute property of the estate under 11 U.S.C. § 1306(a), or whether they revest in a debtor upon confirmation of the Chapter 13 plan pursuant to 11 U.S.C. § 1327(b).

In *Telfair*, the Eleventh Circuit addressed this tension by adopting the "estate transformation" approach. *Telfair*, 216 F.3d at 1340. Under the "estate transformation" approach, "the plan upon confirmation returns so much of that property to the debtor's control as is not necessary to the fulfillment of the plan." *Id*. (quoting *In re Heath*, 115 F.3d 521, 524 (7th Cir. 1997)). Accordingly, "only the amount required for the plan payments remained property of the estate." *Id*.[5]

Although a conflict can arise in construing §§ 1306(a) and 1327(b) with respect to post-confirmation earnings, as identified and resolved in *Telfair*, the language of the Confirmation

---

[5] In *In re Toth*, also cited by Movant at the Hearing, the court found that property of the estate ceases to exist after confirmation of the plan. *In re Toth*, 193 B.R. 992, 993 (Bankr. N.D. Ga. 1996). The question before the court in *Toth* was whether real property acquired by the debtors post-confirmation constituted property of the estate and was therefore subject to the automatic stay of Section 362. *Toth*, 193 at 993. In reaching its conclusion, the *Toth* court also had to reconcile the conflicting provisions of Section 1306(a) and Section 1327(b), as neither the debtors' plan nor the confirmation order in their case contained a provision that would affect the operation of Section 1327(b). *Id*. Ultimately, the Court in *Toth* found that the "vesting" at confirmation under of Section 1327(b) extinguished the bankruptcy estate, such that all such property of the estate revests in the debtor upon confirmation. *Id.* at 997. Notably, the *Toth* court explained that "if a debtor wishes the § 1327(b)-allowed protection of the automatic stay following confirmation, that protection may be obtained by the simple expedient of so providing in the plan or confirmation order, as is permitted by the Bankruptcy Code." For the same reasons *Telfair* is inapplicable to this case, the holding in *Toth* is also inapplicable, as the Confirmation Order and the Plan provide for an alternative treatment of property of the estate upon confirmation, as permitted by Section 1327(b).

6

Order forecloses such a conflict.[6]  Pursuant to the Confirmation Order, "[p]roperty of the estate shall not revest in Debtor until the earlier of discharge of Debtor, dismissal of the case, or closing of case without entry of a discharge, unless the Court orders otherwise."  *See* Confirmation Order, Docket No. 29.[7]  This language makes clear that, until one of the enumerated events occurs, property of the estate does not revest in the Debtor upon confirmation.  Because none of these events have yet occurred in this case, property of the estate has not revested in the Debtor.

Unlike in *Telfair*, the Confirmation Order here "otherwise provides" that property of the estate shall not revest in the Debtor upon confirmation.  11 U.S.C. § 1327(b)("*Except as otherwise provided in the plan or the order confirming the plan*, the confirmation of a plan vests all of the property of the estate in the debtor.")(emphasis added).  Because the Confirmation Order contains a provision that affects the operation of 11 U.S.C. § 1327(b), the holding of *Telfair* and the "estate transformation" approach are inapplicable to this case.  Instead, *all* of the Debtor's post-confirmation earnings remain property of her bankruptcy estate under 11 U.S.C. § 1306(a) and the Confirmation Order.  Consequently, such earnings remain subject to the protection of the automatic stay of 11 U.S.C. § 362(a), such that Movant must seek relief from the stay to execute on the Debtor's post-confirmation earnings.

---

[6] As noted previously, Movant asserts that requiring it to be bound by the Confirmation Order and the confirmed Plan (which make the Debtor's post-confirmation earnings property of the estate and not the Debtor) would violate its due process rights.  This is simply incorrect.  Pursuant to the record in this case and its own assertions, (*See* Motion, ¶¶ 2-3), Movant was not a creditor at the time of the entry of the Confirmation Order.  Consequently, it was not entitled to notice or an opportunity to be heard regarding confirmation.  It received all the process it was due – none.  Further, entry of the Confirmation Order does not "bind" Movant as much as it establishes the legal landscape into which Movant made its Loan.  At the time that both the Live Check Loan and the Loan were purportedly made, the Debtor was in bankruptcy, and the Confirmation Order had been entered, making the post-confirmation earnings of the Debtor property of the estate, and not of the Debtor.  Had Movant done *any diligence whatsoever* regarding the bankruptcy status of the Debtor, it would have learned those facts and could have acted accordingly.  Movant's lack of diligence does not constitute a due process violation.

[7] The Plan has a similar provision.  *See* Plan, ¶ 9.

7

## II. Relief from the Automatic Stay

Having determined that the Debtor's post-confirmation earnings are property of the estate, we must now turn to whether stay relief is appropriate. In that regard, the parties do not dispute that Movant does not need relief from the automatic stay to bring an action against the Debtor to collect on its postpetition debt. *See In re Reynard*, 250 B.R. 241, 244 (Bankr. E.D. Va. 2000)(explaining that Section 362(a) "does not prevent the commencement of a lawsuit to collect a post-petition debt."). Accordingly, Movant does not require stay relief to demand payment of its Claim, or to initiate a suit on the Claim and prosecute such action to judgment.[8]

However, "[t]he right to undertake collection activity, including filing a lawsuit, to collect a post-petition debt does not allow *all* collection activities." *Id.* (emphasis added). 11 U.S.C. §§ 362(a)(3) and (4) prohibit "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[, and] any act to create, perfect, or enforce any lien against property of the estate," such that the commencement of garnishment proceedings against property of the estate would clearly implicate either subsection, and Movant would not be permitted to undertake such activities without first obtaining stay relief. Hence, in the absence of stay relief, Movant's "[r]ecourse is limited to property that is not property of the estate." *Id.* at 245.

To the extent Movant seeks to execute on property of the estate, relief from stay to permit that activity is premature at this stage of this matter, as Movant has no judgment upon

---

[8] In fact, the Court explained to Movant at the Hearing that it was free to liquidate the Claim to the point of judgment while the Court took the issue of garnishment under advisement.

which it can execute. Movant has not even initiated a lawsuit against the Debtor.[9] As Movant seeks prospective relief to which it may never be entitled, the Motion is denied without prejudice as being premature.

Moreover, even the Motion were not premature, it would nonetheless be denied because Movant—in the Motion and at the Hearing—failed to establish a right to have the stay lifted pursuant to 11 U.S.C. § 362(d). Section 362(d) governs relief from the automatic stay of Section 362(a), and provides in relevant part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
>
> (A) the debtor does not have an equity in such property; and
>
> (B) such property is not necessary to an effective reorganization

11 U.S.C. § 362(d). With regard to stay relief under Section 362(d)(1), Movant, as the proponent of stay relief, bears the burden of proof to show that sufficient "cause" exists for lifting the stay. *See Sonnax Indus., Inc. v. Tri Component Prods. Corp.* (*In re Sonnax Indus., Inc.*), 907 F.2d 1280, 1285 (2d Cir. 1990)(stating that 11 U.S.C. § 362(d)(1) "requires an initial showing of cause by the movant" and if the movant "fails to make an initial showing of cause. . . the court should deny relief. . .").

---

[9] "The appropriate time to seek relief from the stay is after a final judgment has been obtained in state court and relief is necessary to execute against property of the estate." *Reynard*, 250 B.R. at 250.

9

The term "cause" is not defined in the Bankruptcy Code; rather, courts are left to determine in their own discretion what constitutes cause on a case by case basis. *See Baldino v. Wilson* (*In re Wilson*), 116 F.3d 87, 90 (3d Cir. 1997).[10] Case-specific factors that aid courts in evaluating whether cause exists under Section 362(d)(1) include: "(1) whether the debtor has acted in bad faith; (2) the hardships imposed on the parties with an eye towards the overall goals of the Bankruptcy Code; and (3) pending state court proceedings." *Disciplinary Bd. v. Feingold* (*In re Feingold*), 730 F.3d 1268, 1277 (11th Cir. 2013)(internal quotations and citations omitted). With regard to the second factor, the Court "must compare the equities of freeing the creditor from the restraint of the automatic stay so that it may pursue its claim promptly in another forum against the impact that such relief is likely to have on the bankruptcy process." *In re Irwin*, 457 B.R. 413, 426 (Bankr. E.D. Pa. 2011).

As to the first factor, Movant has failed to adequately allege the existence of bad faith on behalf of the Debtor. Movant contends that the Debtor acted in bad faith by failing to disclose this bankruptcy case when she obtained the Live Check Loan and the Loan from Movant. There is no evidence, however, that the Debtor actually made any misrepresentation in that regard or that the Debtor acted intentionally in failing to disclose her bankruptcy (if she failed to do so). Moreover, Movant's lack of diligence impairs its ability to obtain any such finding. Movant is a

---

[10] Accordingly, courts are afforded considerable discretion in making such determinations. *See In re Irwin*, 457 B.R. 413, 426 (Bankr. E.D. Pa. 2011). One form of "cause" provided by the language of Section 362(d)(1) is a "lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). Movant, as an unsecured creditor, has no interest in the subject property—the Debtor's post-confirmation earnings. Accordingly, it cannot lack adequate protection of an interest in property, as it has no such interest in any property of the Debtor or the bankruptcy estate. *See In re SunEdison, Inc.*, 562 B.R. 243, 252 (Bankr. S.D. N.Y. 2017)(explaining that unsecured creditors "do not have an interest in property of the estate that merits adequate protection, and there is no express statutory requirement that unsecured creditors receive adequate protection."); *In re Kroger*, 2013 WL 4666738, at *3 (Bankr. S.D. Ill. Aug. 30, 2013)(noting that because adequate protection is designed to "protect an entity's interest in property against a decrease in value and to afford it the benefit of its bargain," it is not available "to unsecured creditors who, by definition, do not have interests in property."). Thus, lack of adequate protection under Section 362(d)(1) is inapplicable to Movant.

creditor that regularly appears in this Court, and no doubt has online access to its records. That notwithstanding, Movant made two unsecured loans to the Debtor, apparently without first making in either case any inquiry to determine whether she was a debtor in a bankruptcy case.[11] This abject lack of diligence would certainly preclude Movant from saying that it reasonably relied on any statements made by the Debtor,[12] had it proved any such statements were actually and intentionally made. As a result, Movant has not proved that the Debtor acted in bad faith with regard to Movant.

Second, in balancing the hardships to the parties, the hardship to the Debtor if the stay is lifted far outweighs any hardship to Movant if it is not. Given the stage of the Debtor's case,[13] it appears certain that garnishment of the Debtor's post-confirmation wages would impede the effective administration of the Plan. *See, e.g., In re Screen*, 2004 WL 6044672, at *2 (Bankr. S.D. Ga. May 20, 2004)(noting that "garnishment is also inconsistent with the notion of voluntary repayment underlying a Chapter 13 reorganization."). If Movant were permitted to institute garnishment proceedings against post-confirmation earnings, the Debtor's ability to perform under the Plan would be severely impacted, as she is required to dedicate all of her net disposable income towards repaying her creditors under the Plan. *See* 11 U.S.C. § 1325(b)(1)(B). Thus, "there is nothing left over for a creditor to seize that does not affect a

---

[11] "To allow post-confirmation creditors to undermine the ability of pre-confirmation creditors to be paid would place creditors who were or should have been aware of [a debtor's] financial difficulties in a better position than those who may have extended credit before [a debtor's] precarious financial position arose." *In re Kolenda*, 212 B.R. 851, 855 (Bankr. W.D. Mich. 1997).

[12] Because the Court has no documents from the Live Check Loan or the Loan before it, it cannot determine the existence or prominence of any such alleged representations by the Debtor.

[13] The Debtor filed this case in 2014. The case will be over, and the Debtor potentially eligible for a discharge, no later than 2019. *See* 11 U.S.C. §§ 1325(b)(1)(B); 1329(c); Plan, ¶ 2; Hearing Statement of Chapter 13 Trustee.

11

debtor's ability to successfully complete the chapter 13 plan." *In re Reynard*, *supra,* 250 B.R. at 249.

According to the Debtor's sworn schedules, she makes approximately $2,500.00 per month. After expenses, she has $290.00 per month left over to dedicate to the Plan. All of those funds are being paid to the Chapter 13 Trustee under the Plan. Under Georgia law, Movant would be able to garnish 25 percent of the Debtor's net wages, or over $500.00 per month.[14] No evidence was presented in the Motion or at the Hearing that the Debtor's current earnings exceed the amount necessary for her performance under the Plan by any amount, much less by over $500.00, such that garnishment of her earnings would certainly impact the Debtor's performance under the Plan. Thus, to permit garnishment of the Debtor's earnings would be prejudicial to the Debtor's reorganization in this case.

Conversely, the prejudice to Movant in keeping the stay in place is minimal when compared to the potential hardship to the Debtor if the stay is lifted. If the stay is not modified to permit Movant to garnish the Debtor's earnings, Movant will instead be required to wait until the earlier of: (i) completion of the Plan, (ii) closing of the case without a discharge, or (iii) dismissal of the case. According to the statements made by the Chapter 13 Trustee at the Hearing, the Debtor has approximately fourteen (14) months of performance remaining under the Plan. As Movant holds a postpetition debt not subject to discharge under 11 U.S.C. § 1328(a), it would have to wait, at the longest, fourteen (14) months for the Plan to be completed before commencing garnishment proceedings against the Debtor's earnings. At that time, the Debtor would have received a discharge of her other debts, would no longer be making the $290.00 per

---

[14] *See* O.C.G.A. § 18-4-5(a).

12

month Plan payment, and would own her vehicle free and clear. At that time, Movant could collect its roughly $2,000.00 Loan via garnishment at a rate of over $500.00 per month, such that full collection would only take a few months.[15]

Finally, Movant has—as of the Hearing—failed to initiate a lawsuit against the Debtor outside of this bankruptcy proceeding. The lack of a pending state court lawsuit also weighs in favor of keeping the stay in place.

As to stay relief under Section 362(d)(2),[16] even if the Debtor does not have any "equity" in her post-confirmation earnings, such property is undoubtedly necessary for an effective reorganization of the Debtor as outlined *supra*. Pursuant to 11 U.S.C. § 1325(b)(1)(B), the Debtor must contribute all of her net disposable income to the Plan. If Movant were permitted to garnish those earnings, the Debtor's ability to reorganize would be severely impaired, as the successful completion of the Plan depends upon the Debtor's disposable income and ability to make Plan payments. Accordingly, because the Debtor's post-confirmation earnings are necessary to an effective reorganization in this case, Movant is not entitled to stay relief under Section 362(d)(2).[17]

---

[15] Further, granting Movant stay relief to garnish the Debtor's earnings would not likely result in a successful garnishment by Movant. Instead, it is much more likely that the Debtor would dismiss this case, (*see* 11 U.S.C. § 1307(b)), and would file a new case under Chapter 7 or Chapter 13, in which the Claim would be a prepetition unsecured claim subject to the automatic stay and to discharge.

[16] Section 362(d)(2) provides for stay relief if: (i) the debtor does not have equity in the subject property; and (ii) the subject property is not necessary for an effective reorganization. 11 U.S.C. § 362(d)(2).

[17] Moreover, it is not entirely clear that Movant, an unsecured creditor, can even seek stay relief under Section 362(d)(2). *See In re U.S. Physicians, Inc.*, 236 B.R. 593, 605 (Bankr. E.D. Pa. 1999)(explaining that relief under Section 362(d)(2), as it requires a lack of equity in the subject property, ". . . is only appropriately granted when the movant has a security interest in that property."); *In re Hunt's Pier Assocs.*, 143 B.R. 36, 50 (Bankr. E.D. Pa. 1992)("[R]elief under [Section] 362(d)(2), requiring, as it does, a debtor's lack of equity in the property regarding which relief is sought, is only appropriately granted when the movant has a security interest in that property.").

## CONCLUSION

In light of the foregoing, the Court finds that Movant has failed to demonstrate any basis under 11 U.S.C. § 362(d) that would justify lifting the automatic stay at this time. Accordingly, upon consideration of the Motion and the statements made by the parties at the Hearing, it is hereby

**ORDERED** that the Motion, to the extent Movant seeks to initiate garnishment proceedings against the Debtor's post-confirmation earnings, is **DENIED** without prejudice.

The Clerk is directed to serve copies of this Order upon the Movant, counsel for Movant, the Debtor, counsel for the Debtor, and the Chapter 13 Trustee.

**[END OF DOCUMENT]**